o

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

|  |  |  |
|---|---|---|
| MARIA DEL REFUGIO ESCAMILLA, et al., | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Case No. 5:11-cv-13 |
| WEBB COUNTY, TEXAS, et al., | § § | |
| Defendants. | § § § | |

## MEMORANDUM AND ORDER

Pending before the Court are the Plaintiffs' objections (Dkt. 280) to the Report and Recommendation of Magistrate Judge Guillermo R. Garcia (Dkt. 275), which pertained to Defendant's pending motion to dismiss (Dkt. 225) and cross-motions by all parties for summary judgment (Dkt. 227, 228, 229, and 233).

Plaintiffs have sued for the injuries to and death of Rafael Edgardo Solis Sr., which occurred on February 14, 2009 while he was in pretrial custody at the Webb County Jail. (See Dkt. 117.) The Plaintiffs allege that Solis died of asphyxiation caused by the jailors' use of excessive force against him. (Dkt. 117 at ¶¶1, 28.) The Plaintiffs also maintain that Solis suffered at least one seizure on his first or second day at the jail, February 11 or 12, indicating that he needed medical attention early in his jail stay, but the need was ignored.

(Dkt. 280 at pp. 13-14, 34-37.) According to Plaintiffs, Solis should have been transported to a hospital immediately instead of several days later, in which case he may have lived. (Id.)

The Defendants counter that on February 14, 2009, several days into Solis's jail stay, he began acting erratically, and eventually it became obvious that he needed medical attention. (Dkt. 227 at p. 2; Dkt. 228 at p. 2; Dkt. 229 at p. 11.) The individual Defendants, primarily jailors, claim that they applied force against Solis on only four distinct occasions on February 14: first, to prevent Solis from hurting himself; second, to switch Solis's handcuffs; third, to give Solis a shot of Benadryl; and, fourth, to put pants on Solis so that they could transport him to the hospital. (See Dkt. 227 at pp. 4-5; Dkt. 228 at pp. 4-5.) It is undisputed that Solis died directly after this final use of force. Defendant Webb County's expert maintains that Solis died due to delirium tremens (DTs), a severe form of alcohol withdrawal, and not due to any use of force. (See Dkt. 227-7 at pp. 9, 24-26, 29.)

Plaintiffs and Defendants filed cross-motions for summary judgment. (Dkt. 227, 228, 229, and 233.) Defendant Webb County also filed a motion to dismiss. (Dkt. 225.) Upon a referral from this Court (Dkt. 238), Magistrate Judge Guillermo R. Garcia issued a Report and Recommendation recommending that this Court dismiss the action in its entirety (Dkt. 275). The Plaintiffs

have filed objections (Dkt. 280) and a supplement to their objections (Dkt. 281).

**Plaintiffs' Claims**

The Plaintiffs' Second Amended Complaint (Dkt. 117) is confusing. It does not clearly delineate the different claims or explicitly provide the legal basis for some of the claims. However, the parties do not object to Judge Garcia's summary of the Plaintiffs' claims. (See Dkt. 280.)  Therefore, this Court adopts his description of the claims as follows:

1. <u>Federal Civil Rights Claims</u>

    a. [Title 42 of the United States Code,] Section 1983 claim against Defendants Webb County, Sheriff Martin Cuellar, and jailors[1] for violating Solis's constitutional right to be free from excessive force under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution. (Dkt. 117 at ¶¶ 4-13, 17-31, 71).  Sheriff Martin Cuellar and the jailors are sued in their official and individual capacities.

    b. Section 1983 claim against Defendants Webb County, Sheriff Martin Cuellar, and jailors for violating Solis's constitutional right to medical care under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution. (Id.).  Sheriff Martin Cuellar and the jailors are sued in their official and individual capacities.

    c. Section 1983 claim against Defendants Webb County and Sheriff Martin Cuellar for failing to adequately train

---

[1] The term "jailors" refers to all individual defendants, except for Sheriff Martin Cuellar.  The jailors are the Webb County employees who were present at Webb County Jail during Solis's detention and had actual contact with Solis.  They consist of Jorge Joel Cavazos, Gerardo Gonzalez, Rolando Cantu, John Jimenez, Carlos Diaz, Juan Roque, Ramiro Rendon, and Guadalupe Javier Rivera.

and supervise deputies which resulted in the violation of Solis's constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution. (<u>Id.</u> at ¶¶ 39–41). Sheriff Martin Cuellar is sued in his official and individual capacities.

d. A claim against Defendants Webb County and Sheriff Martin Cuellar for the negligent hiring and failure to discipline. (<u>Id.</u> at ¶¶ 42–46). Sheriff Martin Cuellar is sued in his official and individual capacities.

e. Section 1985 claim against Defendants Webb County and Sheriff Martin Cuellar, and jailors, in their individual capacities, for conspiring to deprive Solis of his constitutional rights. (<u>Id.</u> at ¶¶ 33–35).

f. Section 1986 claim against Defendant Webb County and jailors, in their individual and official capacities, for intentionally or negligently failing to thwart a conspiracy to deprive Solis of his constitutional rights. (<u>Id.</u> at ¶¶ 36–37).

## 2. <u>Texas Tort Claims</u>

Plaintiffs assert the following state tort claims against Defendants: battery, assault, civil conspiracy, breach of non-delegable fiduciary duty, intentional infliction of emotional distress, wrongful death, slander and slander per se. (<u>Id.</u> at ¶¶ 47–70).

## 3. <u>Miscellaneous Claim</u>

Plaintiffs assert a claim against Webb County under the doctrine of respondeat superior and agency seeking to hold the County liable for the misconduct of its employees. (<u>Id.</u> at ¶ 72).

(Dkt. 275 at pp. 8-9 (footnote otherwise numbered in the original).)

### Standard of Review

The Court must conduct a _de novo_ review of any portions of a Report and Recommendation to which a party properly objects. 28 U.S.C. § 636(b)(1). The Court can also review other portions of a Report and Recommendation _de novo_, although it is not required to do so. See _Thomas v. Arn_, 106 S.Ct. 466, 474 (1985). In reviewing a magistrate judge's report and recommendation, the Court can exercise its discretion to consider both new evidence and new legal arguments. _Requena-Rodriguez v. Pasquarell_, 190 F.3d 299, 307 n.27 (5th Cir. 1999) (new arguments); _Freeman v. Cnty. of Bexar_, 142 F.3d 848, 852 (5th Cir. 1998) (new evidence).

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant carries the "initial burden of showing there is no genuine issue of material fact." _Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc._, 738 F.3d 703, 706 (5th Cir. 2013) (quoting _Allen v. Rapides Parish Sch. Bd._, 204 F.3d 619, 621 (5th Cir. 2000)). The nonmoving party is then "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence support[s] their claim." _Willis v. Cleco Corp._, 749 F.3d 314, 317 (5th Cir. 2014) (alteration and internal quotation in original). In deciding a summary

judgment motion, the Court "must consider the evidence in the light most favorable to the non-movant, and any reasonable inferences to be drawn in favor of that party." <u>Transmaritime</u>, 738 F.3d at 706 (internal footnote omitted).[2] Cross-motions for summary judgment must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment. <u>Shaw Constructors v. ICF Kaiser Engineers, Inc.</u>, 396 F.3d 533, 538-39 (5th Cir. 2004).

Discussion

Here, Plaintiffs purport to object to "all analysis, disposition of fact issues, conclusions, and recommendations of the Magistrate to dismiss Plaintiffs' claims against the Defendants." (Dkt. 280 at p. 7.) This blanket objection is too general to require this Court to perform <u>de novo</u> review of the entire Report and Recommendation. <u>See</u> Fed. R. Civ. P. 72(b)(2) (objections to a report and recommendation must be "specific"). Nonetheless, the Plaintiffs raise a significant amount of more specific objections to parts of Judge Garcia's analyses. (<u>See</u>

---

[2] Defendant Webb County has also filed a motion to dismiss pursuant to Rule 12(b)(6). (Dkt. 225.) However, as will be discussed below, this motion primarily requests the dismissal of the state law claims based on Texas governmental immunity and a Texas election-of-remedies statute.

Dkt. 280 at pp. 21-56.) Therefore, the Court has performed its review _de_ _novo_. _See_ _Thomas_, 106 S.Ct. at 474 (Federal Magistrates Act does not prevent District Court from reviewing entire Report and Recommendation _de_ _novo_). After doing so, the Court concludes that most of Magistrate Judge Garcia's Report and Recommendation is well-reasoned and his fact-findings, legal analyses, and ultimate recommendations are sound, with the following exceptions.

## §1983 Claim of Excessive Force

The Fourteenth Amendment protects pretrial detainees from use of excessive force. _Valencia v. Wiggins_, 981 F.2d 1440, 1449 (5th Cir. 1993). The Eighth Amendment protects convicted inmates from use of excessive force. _E.g._, _Hudson v. McMillian_, 112 S.Ct. 995, 998 (1992). The same test nonetheless applies to determine whether a use of force is unconstitutionally excessive under either the Eighth or Fourteenth Amendment. _Valencia_, 981 F.2d at 1445-47. That test is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." _Id._ at 1446 (quoting _Hudson_, 112 S.Ct. at 998). Under this test, guards can only be liable if they have committed more than "mere negligence"; "ordinary errors of judgment" are not enough. _Whitley v. Albers_, 106 S.Ct. 1078, 1086 (1986). This test concerns the subjective intent of the jail guards in

applying force, but the Court, in deciding the issue, can look to a number of "objective factors suggestive of intent." Valencia, 981 F.2d at 1446. Some relevant factors include the following: "1. The extent of the injury suffered; 2. The need for the application of force; 3. The relationship between the need and the amount of force used; 4. The threat reasonably perceived by the responsible officials; and 5. Any efforts made to temper the severity of the forceful response." Id. at 1446 n.29 (quoting Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992) (Fifth Circuit decision on remand from the Supreme Court)).

As noted above, an excessive force claim generally hinges on the subjective intent of the Defendant jailors. See Valencia, 981 F.2d at 1446. "[C]ases which turn on the moving party's state of mind are not well-suited for summary judgment . . . because it is particularly difficult for the nonmoving party to challenge the 'self-serving testimony' of the moving party without the benefit of trial accessories, namely cross-examination." Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1265 (5th Cir. 1991). The nonmoving party still cannot rest on mere allegations. Id. at 1266. Instead, "[t]he nonmoving party should come forward with evidence, direct or circumstantial, which would allow for the reasonable inference

that the moving party acted with a contrary intent or state of mind." Id.

### *Defendant Jailors in their Individual Capacities*

The Defendant jailors maintain that the force they exerted on Solis was relatively minimal, and that they exerted it primarily to stop Solis from hurting himself and to prepare him for medical attention. (See Dkt. 275 at pp. 34-37.) Obviously their testimony on this subject is self-serving. There are four pieces of evidence that could undermine the Defendant jailors' claims: 1) the fact of Solis's death; 2) other serious injuries suffered by Solis as described in the autopsy; 3) the Texas Ranger's observation of the unique bruising as explained in his report; and 4) the homicide ruling by the County Coroner.

The homicide ruling indicates that the medical examiner believed that the injuries and death were intentional. (Dkt. 280 at pp. 29-32.) Both the fact of Solis's death and the significant injuries he sustained also undermine the jailors' contention that they applied force in good faith. Solis died during or soon after the jailors' last application of force. (See, e.g., Dkt. 261 at p. 71.) The autopsy report concluded that Solis had died from "mechanical and position [sic] asphyxiation resulting from physical restraint." (Id. at p. 71.) Moreover, the Inmate's Initial Medical Record indicates that there was no "evidence of recent physical injury seen on" Solis

shortly after he arrived at the jail. (Id. at p. 9.) Yet, the autopsy report found that Solis had suffered two fractured ribs, "contusion of diaphragm," "hemorrhage in soft tissue of back," "hemorrhage of chest wall musculature," and "[e]xternal [a]brasions and [c]ontusions." (Id. at p. 71.) Further, the Texas Ranger's report noted that a photograph of Solis's chest showed unique bruising on the right chest area. (Dkt. 227-1 at p. 31.) The Ranger concluded that some of this bruising "may have been caused" by one of the jailers' work boots because the "cross patterns" were consistent with the laces from their boots. (Id.)

The Court finds that the Plaintiffs have raised a genuine issue of material fact as to whether the guards exerted force with the requisite subjective intent. A reasonable jury could infer that Solis's death and serious injuries indicated use of more force than was necessary for the needs of preventing Solis from hurting himself and transporting him to the hospital. See Wilkins v. Gaddy, 130 S.Ct. 1175, 1178-79 (2010) (per curiam) (the severity of an injury is relevant in determining whether force was necessary and "may also provide some indication of the amount of force applied"). A reasonable jury could also find that if Solis did present a threat to anyone, it was mainly to himself, and therefore the need for using force against him was not particularly great. The distinct bruising on Solis's chest,

which the Ranger found consistent with a jailor's boot, could indicate to a reasonable jury that a jailor might have kicked Solis. Thus, reasonable jurors could find that the Defendant jailors exerted excessive force "maliciously and sadistically." See Valencia, 981 F.2d at 1447. A jury could also believe that the guards did not try hard enough to exert less severe force.

For these reasons, Plaintiffs' excessive force claims against the Defendant jailors can go forward. See Int'l Shortstop, 939 F.2d at 1265-66 (particularly in cases that hinge on state of mind, "the court must be vigilant to draw every reasonable inference from the evidence in the record in a light most flattering to the nonmoving party" (emphasis in original)).

It is undisputed that all of the named Defendant jailors were present for, or involved with, at least one incident of force against Solis. At this point, however, with one exception, it is impossible to determine which Defendant jailors, if any, caused the injuries to Solis. It appears undisputed that the most serious injuries occurred after the final use of force. Even minor injuries can give rise to an excessive force claim, however, if a guard acted with the requisite intent. See Wilkins, 130 S.Ct. at 1177-79 (excessive force claim could go forward on allegations of "'a bruised heel, lower back pain, increased blood pressure, as well as migraine headaches and dizziness' and 'psychological trauma and mental

anguish . . . .'" (quoting complaint)). Therefore, at this time, the Court declines to grant summary judgment to seven jailors.

However, Judge Garcia's Report indicates that, with respect to EMT Guadalupe Javier Rivera, his only involvement in force was to administer a shot of Benadryl on Solis's right buttocks and to respond to a call to check whether Solis still had a pulse. The Court concludes that Rivera is entitled to summary judgment.

### *County and Individual Defendants in their Official Capacities*

Suits against all the individual Defendants in their official capacities are in essence suits against the County. See Monell, 98 S.Ct. at 2035 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). The County, and therefore the individuals in their official capacities, cannot be liable for a §1983 claim under a theory of respondeat superior. Id. at 2036. Instead, a county can be liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 2037-38. Such a policy can take two forms:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003) (quotation omitted).

Here, the Plaintiffs do not point to any "policy statement" that promotes the use of excessive force or to any "persistent, widespread practice" of using excessive force. Indeed, the use of force policy in place at the time of Solis's death was eminently reasonable: "Physical force may be employed against an inmate <u>only</u> if necessary for self-protection, protection of others, or protection of the inmate from himself/herself. In such instances only reasonable force given the situation shall be used." (Dkt. 190-3 at p. 94 (emphasis in original).) Further, Plaintiffs do not point to evidence of any other prior incidents of excessive force at the jail.

Plaintiffs do not question the existence of the jail's use of force policy, and so the claim in their objections that there was <u>no</u> use of force policy at all at the time of Solis's death (Dkt. 280 at p. 33) is clearly controverted by the record. Plaintiffs alternatively assert that the policy was not sufficiently specific. They argue that the County failed to implement specific policies that could help train or supervise the jail guards in specific areas: (1) the policy did not

specifically instruct guards about how to use force on sick detainees (Dkt. 280 at p. 27), (2) the policy did not require the guards to seek medical help for detainees after each use of force (id. at p. 33), (3) the policy did not specify when detainees should be restrained face-up or face-down (id. at p. 32), (4) the policy did not require guards to monitor restrained detainees (id. at p. 33), and (5) the policy did not require guards to obtain supervisor or medical approval before restraining detainees (id.).

For a county to be liable for failing to act affirmatively, such as a failure to train or supervise, or a failure to implement a policy, a plaintiff must show that the county was deliberately indifferent to the fact that its failure to act would likely cause violations of particular constitutional rights. Burge, 336 F.3d at 370. A single failure to affirmatively act can be found to be deliberately indifferent if "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." Id. at 373.

The Plaintiffs' claims against the County here fail for two reasons. First, the County's policies and training were not inadequate simply because they failed to specifically address Solis's highly particularized situation. See Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005). Second, the

Plaintiffs fail to show that Defendant Webb County was deliberately indifferent to the fact that its failure to act would likely result in the use of excessive force against pretrial detainees. The Plaintiffs have presented no evidence that the failure to implement the proposed training, supervision, or policies led to constitutional violations and that those violations were a "highly predictable consequence." <u>Burge</u>, 336 F.3d at 373 (quotation omitted). While the Plaintiffs may be correct that their proposed changes would improve Defendant Webb County's jails, it was by no means obvious that the failure to implement Plaintiffs' highly specific proposals would lead to constitutional violations.

Accordingly, Plaintiffs' claim of excessive force against the Defendant County and against all other Defendants in their official capacities will be dismissed.

### <u>Defendant Sheriff Cuellar's Individual Liability</u>

The Plaintiffs do not allege that Defendant Sheriff Cuellar was directly or personally involved in any use of force against Solis. Instead, Cuellar is sued only for his supervisory role over the jail. Supervisors cannot be found liable under §1983 through <u>respondeat</u> <u>superior</u>. <u>Roberts</u>, 397 F.3d at 292. Plaintiffs instead must show that the Sheriff was deliberately indifferent in failing to train or supervise the individual jailor Defendants. <u>Id.</u> For reasons already discussed above,

Plaintiffs cannot show that Defendant Cuellar was deliberately indifferent. Accordingly, the §1983 claim of excessive force against him will be dismissed.

### The Remaining Federal Claims

As stated at the outset, this Court has concluded that most of Magistrate Judge Garcia's Report and Recommendation is well-reasoned and his findings, legal analyses, and ultimate recommendations are sound. Accordingly, this Court fully adopts the remaining portions of the Report and Recommendation. This refers to the following: 1) the §1983 claim to medical care; 2) the claim for the negligent hiring and failure to discipline; 3) the §1985 claim for conspiring to deprive Solis of his constitutional rights; and 4) §1986 claim for intentionally or negligently failing to thwart a conspiracy to deprive Solis of his constitutional rights.

### State Tort Claims

Defendant Webb County's Motion to Dismiss (Dkt. 225) moves to dismiss the state tort claims as to both the individual Defendants and Defendant Webb County. Judge Garcia did not deal with the merits of this motion. (Dkt. 275 at p. 41.) Instead, he recommended that the Court decline to exercise supplemental jurisdiction after dismissing all of the federal claims. (Id. (citing 28 U.S.C. §1367(c)(3)). Given the Court has decided that one of the federal claims will be retained, it now turns to the

16/22

merits of the state claims. These state claims appear at paragraph X, sections A through H, of the Second Amended Complaint.

### *Individual Defendants*

First, Defendant Webb County moves for the dismissal of the Plaintiffs' state tort claims against its employees. (Dkt. 225 at ¶¶3-4.) Defendant points to §101.106(e) of the Texas Civil Practices and Remedies Code: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by a governmental unit." Any tort suit is a "suit filed under this chapter." Mission Consolidated Ind. Sch. Dist. v. Garcia, 253 S.W.3d 653, 658-60 (Tex. 2008).

In their response to the Motion to Dismiss, the Plaintiffs argue that they never brought state tort claims against Defendant Webb County, and therefore §101.106(e) does not apply. (Dkt. 258 at pp. 2-4.) They point to the introductory paragraph of the "Pendent State or Supplemental Claims" section, which states, "The Defendant jailors' conduct violates clearly established statutory and/or constitutional rights of which a reasonable person would have known." (Id. at ¶47.) This Court concludes that the Plaintiffs have brought the state tort claims against only the individual Defendant jailors. Accordingly, the

individual Defendants are not entitled to dismissal of the state tort claims under §101.106(e).

Webb County alternatively invokes §101.106(f) to dismiss the individual jailors. (Dkt. 225 at p. 4.) That section provides that if "a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Texas Tort Claims Act] against the governmental unit, the suit is considered to be against the employee" in his official capacity only.[3] Tex. Civ. Prac. & Rem. Code §101.106(f). Under these circumstances, it provides that the employees are entitled to dismissal, but that a plaintiff may maintain an action against the governmental unit. Id.

Plaintiffs counter that the jailors were acting outside the scope of their employment, and so §101.106(f) is inapplicable. This contention is meritless. It is undisputed that the incidents surrounding Solis's injuries and death all took place inside Webb County Jail. Also undisputed is the fact that the jailors were on duty and carrying out the objectives of the jail. Aside from their conclusory allegations, Plaintiffs point

---

[3] Any tort action brought against a government employee acting in the general scope of her employment is one that "could have been brought under [the Texas Tort Claims Act] against the governmental unit," even if the particular tort alleged is one for which sovereign immunity has not been waived. Franka v. Velasquez, 332 S.W.3d 367, 378 & 381 (Tex. 2011).

to no evidence that might indicate the jailors were acting outside the scope of their employment. Accordingly, the individual jailors are entitled to dismissal of the state law tort claims under §101.106(f). The section permits plaintiffs to amend their pleadings to name the governmental unit. However, since Webb County already interpreted paragraph X of the Second Amended Complaint to be against it, it would be more efficient to accept that proposition rather than to require another amended complaint. (See Dkt. 225 at pp. 4-7.)

### *Defendant Webb County*

Under Texas law, governmental immunity protects "subdivisions of the State" from "lawsuits and liability for money damages," unless immunity has been waived. Garcia, 253 S.W.3d at 655 & n.2.

The Plaintiffs do not point to any waivers of governmental immunity by Webb County. (See Dkt. 258.) Moreover, the Court has been unable to find any waivers of governmental immunity that would cover the state tort claims raised here. In Texas, the general waiver of governmental immunity for tort claims is relatively narrow, applying only to motor vehicle accidents and "personal injury and death so caused by a condition or use of tangible personal or real property." Tex. Civ. Prac. & Rem. Code §101.021. The Plaintiffs' state tort claims here were not caused by a motor vehicle accident or a condition or use of

property. (<u>See</u> Dkt. 117.) Therefore, the state tort claims will be dismissed as to Defendant Webb County.

### Plaintiffs' Request to Amend Complaint to Add ADA Claim

In their Objections, the Plaintiffs request leave to amend their pleadings to add a claim under the ADA. (Dkt. 280 at pp. 56-62.) They argue that they are entitled to this amendment primarily because of the Defendants' failure to timely produce discovery. (<u>Id.</u>) However, on August 16, 2013, Judge Garcia sanctioned Defendant Webb County for this discovery violation. (Dkt. 223.) Further, on August 29, 2013, he denied the Plaintiffs' request for leave to amend their pleadings to add an ADA claim in response to this same discovery violation. (Dkt. 237.) Plaintiffs are essentially attempting to object to this denial of leave to amend by Judge Garcia. (<u>See</u> Dkt. 280 at pp. 56-62.)

An objection to Judge Garcia's ruling on a nondispositive pretrial motion, must have been made within 14 days of being served with that order. Fed. R. Civ. P. 72(a). The current objection is six months late. Plaintiffs argue that because once Judge Garcia recommended dismissing all of the claims, they have demonstrated a need for amending the pleadings. (Dkt. 280 at pp. 61-62.) That would not be a good reason under any circumstances but, in any event, the Court has now kept the federal excessive

force claim. Accordingly, the Plaintiffs' request for leave to amend their pleadings will be denied.

### Plaintiffs' Request to Reopen Evidence

The Plaintiffs also request that the Court allow the submission of additional evidence "[i]n the event the Court finds additional evidence necessary to overcome the motions." (Dkt. 280 at p. 64.) The Plaintiffs do not allude to what additional evidence they might be able to offer. Given the extensive discovery already done in this case, this request will be denied.

### Conclusion

For all the foregoing reasons, Plaintiffs' §1983 claim of excessive force remains against seven Defendant jailors — Jorge Joel Cavazos, Gerardo Gonzalez, Rolando Cantu, John Jimenez, Carlos Diaz, Juan Roque, and Ramiro Rendon — in their individual capacities. It is further ORDERED that:

1. Summary Judgment on all claims shall be GRANTED in favor of Webb County, Sheriff Martin Cuellar, and Guadalupe Javier Rivera.

2. Summary Judgment shall be GRANTED in favor of Jorge Joel Cavazos, Gerardo Gonzalez, Rolando Cantu, John Jimenez, Carlos Diaz, Juan Roque, and Ramiro Rendon, EXCEPT for Plaintiffs' §1983 claim that they violated the constitutional right of Solis to be free from the use of excessive force.

3. The Motion for Summary Judgment (Dkt. 233) by Plaintiffs is DENIED; Plaintiffs' request to amend their pleadings to add a claim under the ADA is DENIED; Plaintiffs' request to reopen the evidence is DENIED;

4. **The case is now returned to the docket of Magistrate Judge Guillermo R. Garcia for handling all pretrial matters that may remain pending at this point.**

   **DONE at Laredo, Texas, this 17th day of June, 2015.**

   **George P. Kazen**
   **Senior United States District Judge**